IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
                           SOUTHERN DIVISION

- - - - - - - - - - - - - - x
                           :
UNITED STATES OF AMERICA    :
                           :         Criminal No. DKC-11-0072
      v.                    :
                           :
RICKEY CURVEY,             :
                           :
          Defendant.        :
                           :
- - - - - - - - - - - - - - x         April 9, 2012


                                      Greenbelt, Maryland


                               **HEARING**


          BEFORE THE HONORABLE DEBORAH K. CHASANOW, Judge


APPEARANCES:

For the Government:            JONATHAN F. LENZNER, Esq.
                              ROBERT K. HUR, Esq.
                              Office of the U.S. Attorney
                              6500 Cherrywood Lane, Ste. 400
                              Greenbelt, MD  20770

For the Defendant:            LaKEYTRIA W. FELDER, Esq.
                              Office of the Federal Public
                              Defender
                              100 S. Charles Street
                              Tower II, 9th Floor
                              Baltimore, MD  21201


Also Present:                 JOHN DURHAM, Special Agent
                              Federal Bureau of Investigations


                              NICOLE BLANCHE
                              United States Probation Office

Proceeding recorded by electronic sound recording,
transcript produced by transcription service.

```
Audio Operator:              Cynthia Crawford


Transcription Company:       CompuScribe
                             5100 Forbes Boulevard
                             Suite 101
                             Lanham, MD 20706
                             301/577-5882
```

# I N D E X

| | Page |
|---|---|
| Preliminary matters | 3 |
| Government's Position on Sentencing | 10 |
| Defense's Position on Sentencing | 20 |
| Defendant's Allocution | 31 |
| Imposition of Sentence | 34 |

KEYNOTE: "---" Indicates inaudible in transcript.
         " * " Indicates phonetic spelling in transcript.

1                    **P R O C E E D I N G S**

2              THE CLERK:  The Court resumes in session, the

3      Honorable Deborah K. Chasanow presiding.

4              THE COURT:  Good afternoon.

5              (A chorus of "good afternoon Your Honor.")

6              THE COURT:  Please be seated.  Mr. Lenzner.

7              MR. LENZNER:  Thank you, Your Honor.  Calling the

8      case of the United States of America versus Rickey Curvey,

9      DKC-11-0072.

10             I am Jonathan Lenzner and Robert Hur on behalf of

11     the Government and also present at counsel table is Special

12     Agent John Dunham with the Federal Bureau of Investigations.

13     This matter is called for sentencing.

14             MS. FELDER:  Good afternoon, Your Honor, LaKeytria

15     Felder, Assistant Federal Public Defender representing

16     Mr. Rickey Curvey.

17             THE COURT:  Very good, please be seated.  I want to

18     begin by making certain we all have the same documents.  The

19     pre-sentence report that I have was revised as of March 7th,

20     2012 --

21             MS. FELDER:  Your Honor, I sent your office a copy

22     of the new one on Friday and spoke with Nancy Domcheck* and

23     sent it to her.

24             THE COURT:  I did not print it, I did read it.

25             MS. FELDER:  It just have corrections or additions

1    to the Defendant's psychiatric and physical history.

2            THE COURT:  Right, okay, right I did read it online

3    but I did not print it out, okay.  But we still have issues

4    with regard to criminal history I think on it, okay, but in

5    addition to the pre-sentence report the Defendant submitted a

6    sentencing letter dated March 26th and the Government

7    responded on April 5th.  I also have just received the consent

8    order of forfeiture.  Is that everything?

9            MS. FELDER:  Your Honor, I also submitted a

10   supplement to the letter, to the sentencing letter, under

11   seal dated April 5th that included additional letters of

12   support as well as medical and mental health records.

13           THE COURT:  Did you ever get us the hard copy?  I

14   did not print that as well.

15           MS. FELDER:  Yes, Your Honor, I did.  I believe it

16   was hand delivered to Chambers, I have an additional copy if

17   you would like one.

18           THE COURT:  No, I did read it again online but

19   Sharon Townsend was out on Friday and Nancy Domcheck* is

20   unfortunately not familiar with how to get my files up-to-

21   date, I was aware of that and I read it online but I thought

22   we were waiting for a hard copy and that is the material that

23   Ms. Blanche is referring to that she then incorporated into

24   the updated pre-sentence report.

25           MS. FELDER:  That is correct, Your Honor.

1           THE COURT:  Mr. Lenzner most importantly, did you

2    get all of that?

3           MR. LENZNER:  I did, thank you.

4           THE COURT:  Okay, very good.  It is my

5    understanding Ms. Felder that there is an issue with regard

6    to criminal history calculation but not with regard to the

7    offense level, is that right?

8           MS. FELDER:  That is correct, Your Honor.

9           THE COURT:  And in this version is it Paragraphs 40

10   and 42?

11          MS. FELDER:  That is correct, Your Honor.

12          THE COURT:  Do you want to go ahead and let me know

13   what your position is?

14          MS. FELDER:  Your Honor, our position is that

15   Mr. Curvey should be accurately categorized as a Category 4

16   and we acknowledge that, he may not technically fit within

17   the definition under 4A1.2 in terms of the single sentence.

18          But we believe that under 3553(a) and given the

19   full nature of the criminal history as recognized by the

20   Fourth Circuit in Atkins that the Court can take note that in

21   Paragraphs 40 and 42 of the pre-sentence report you will see

22   that he was in custody in one jurisdiction and then

23   additional charges were filed in a different jurisdiction.

24   He never was released from custody but he was somewhat

25   shuffled back and forth between the two jurisdictions and he

1   has been assessed six points for those two convictions.

2           Our position is that we believe that it should only

3   be a total of four points allocated for those two convictions

4   given the fact that there was not an intervening arrest and

5   that if that objection is accepted then he would be a

6   Category 4 under the guidelines.

7           (Pause.)

8           THE COURT:  How can you tell from here when he was

9   arrested?  I understand technically it does not make any

10  difference because they were not sentenced at the same time

11  and consolidated but I do not even understand why you say he

12  was not arrested on the receiving of stolen property and

13  unauthorized use charge before the robbery with a deadly

14  weapon.

15          MS. FELDER:  I believe he was arrested in April

16  1997 and then the subsequent charge was in May of 1997, he

17  was never released from custody.

18          THE COURT:  Well I know he was in custody from

19  April of '97 on the receiving stolen property but the date of

20  arrest it is stated here is July 27th, '96.

21          MS. FELDER:  That is correct, Your Honor.

22          THE COURT:  So he was arrested in July, probably

23  released but then taken into custody again in April.

24          MS. FELDER:  Your Honor, my understanding is that

25  he was in custody and then this additional charge was filed

1    and he never left custody.  Here it states that he was

2    released 2/12/03.

3            THE COURT:  That is looking at the wrong end of

4    things.  My understanding is that you are contending that he

5    committed the receiving stolen property unauthorized use

6    offense and was not arrested on that until after the robbery

7    with a deadly weapon was committed.  That is what my

8    understanding would be about the failure to have had an

9    intervening arrest.

10           The way I read this report he was arrested on the

11   first one on July 27th, '96 and thus there was an arrest

12   between the two offenses.

13           MS. FELDER:  Your Honor, our position is that there

14   wasn't and I think that the response to the objection is the

15   same and that there was no intervening arrest.

16           THE COURT:  Ms. Blanche, the report has a paragraph

17   number and then a date and according to the report structure

18   it is listed as date of arrest, is that indeed what that is?

19           MS. BLANCHE:  July '96 that is correct, Your Honor.

20           THE COURT:  It is not the date of the offense, it

21   is the date of arrest, sometimes that is the same but this

22   indicates to me that he was arrested on the offense listed in

23   Paragraph 40, July 27th, 1996.

24           He was then arrested and charged with a robbery in

25   May of 1997.  He may already have been in custody at the time

1    he was charged with that second one but that does not trigger

2    the definition of prior sentence in 4A1.2(a)(2).  That is the

3    Defendant was arrested for the first offense prior to

4    committing the second one.

5            Even if he had been, the prior sentences are still

6    counted separately because they were not contained in the

7    same charging instrument and the sentences were not imposed

8    on the same day.

9            So in any event for guideline purposes they would

10   be counted separately, but I do not understand your argument

11   over representation or 3553(a) on that basis --

12           MS. FELDER:  Your Honor, our contention is --

13           THE COURT:  Go ahead.

14           MS. FELDER:  Our contention is that Mr. Curvey was

15   already in custody, there was no new conduct, once he was in

16   custody he was charged with this additional offense.

17   Essentially, he served one continuous sentence from '97 to

18   2003 although he was shuttled between two different

19   jurisdictions.

20           I understand that the Court does not accept that

21   argument but our basis is just that he was in continuous

22   custody for an extended amount of time and while it may not

23   technically fit the definition of a Category 4 we do believe

24   that given that he was in custody and incarcerated for a

25   continuous amount of time and by way of State's action or

1    lack of action the two instances weren't consolidated.

2          Nevertheless, the Court would have the authority

3    under 3553(a) to consider Mr. Curvey as a Category 4 and if

4    the Court were to accept that then its guidelines would be 46

5    and 57 months on Count 2 instead of 57 and 71.

6          THE COURT:  Let me back up, for guideline purposes

7    I believe the pre-sentence report correctly assesses three

8    points for each of those two convictions and thus Mr. Curvey

9    ends up as a criminal history category of 5 for Count 2.

10         For Count 2 the guidelines are advisory and I need

11   to hear fully from both sides before deciding what sentence

12   to impose.  I do not understand this to be a formal request

13   for a downward departure for over representation as that term

14   applies for guideline purposes.

15         MS. FELDER:  That is correct, Your Honor.

16         THE COURT:  So we will continue with 19 and 5 for

17   Count 2, mandatory consecutive 10 year sentence on Count 3.

18   Is anyone to speak other than counsel and the Defendant?

19         MS. FELDER:  No, Your Honor.

20         THE COURT:  No?  All right.  Mr. Lenzner.

21         MR. LENZNER:  Your Honor, the Government is seeking

22   obviously the mandatory 10 years on Count 3 which the

23   Defendant can see, the issue here really goes to Count 2 and

24   my understanding from the Defendant's submission is that they

25   are seeking a variance on Count 2.

1          So the Government is asking for a sentence within

2     the guideline range.  Before I address the actual range, let

3     me just touch on some of the essential and relevant facts if

4     I may that support the Defendant's conviction under Count 2.

5          On September 24th of 2010, the Defendant was

6     driving in a vehicle that had been stolen from a young woman

7     in Prince George's County about nine days earlier.   About

8     3:00 a.m. that day the Defendant went to a gas station in the

9     stolen white Honda Accord and the Defendant who was carrying

10    a loaded firearm approached two men who were there to pump

11    gas into their car.

12         This Defendant placed the loaded firearm against

13    the body of one of the young men and he threatened to shoot

14    them both and he stole their property and then he took their

15    vehicle.  It was this Defendant, Your Honor, who pointed the

16    loaded firearm at the two young men placing them at risk of

17    death or serious injury.

18         He committed these series of acts in view of a

19    video surveillance camera which captured the incident quite

20    clearly and the Defendant drove away in the red stolen

21    vehicle followed by his colleague's white vehicle and within

22    a few minutes the Defendant had parked the stolen vehicle

23    that he just carjacked and he got back into the white

24    vehicle.

25         Now, the responding police officers pursued the

1    white vehicle which the Defendant was in and the vehicle took

2    them on a high speed chase into Washington, DC and on the

3    dashboard camera you can see quite clearly speeds in excess

4    of 100 miles an hour and quite dangerous driving on city

5    streets.

6              Eventually the vehicle crashed and ran into a

7    circle in Washington, DC and the Defendant at that point had

8    a choice to make, made a few choices, could have surrendered,

9    he could have simply just run away but instead he chose

10   another option which was to emerge from the vehicle and fire

11   a loaded firearm in the direction of the police officers who

12   were just doing their jobs that day.

13             He decided that he was going to do almost anything

14   to avoid capture and that included risking and taking the

15   life of another person and looking at Paragraph 10 of the

16   pre-sentence report it states very clearly the Defendant

17   pointed a firearm in the direction of the Prince George's

18   County Police Officers and discharged the weapon as he

19   attempted to flee.

20             After firing at the police officers he ran away and

21   for a few minutes he managed to abate capture during which he

22   tossed the firearm and his shirt and he was later captured by

23   the police officers.  After being identified by the

24   carjacking victims and by the pursuing police officers he was

25   transported to a police station.

1              According to Paragraph 12 of the pre-sentence

2       report, after being removed from the police vehicle the

3       police found on the floor of the vehicle where the Defendant

4       had been more stolen property from another property who had

5       been robbed earlier that day on September 23rd.

6              So how does one fashion a sentence for this

7       Defendant that not only addresses the factors under 18 USC

8       3553(a)?  It is really the Government is not looking to

9       impose a sentence or ask for a sentence that is greater than

10      necessary and we have listened to countless jail calls which

11      this Defendant has spoken to his daughters.

12             We have heard for example one daughter tell her

13      father how proud she was when she had an internship at the

14      FCC and certainly the Government does not want to prevent the

15      young woman from having access to her father.

16             But when you look at this Defendant's violent

17      criminal history and the acts that he committed on this

18      occasion, we wrestle with what is sufficient but not more

19      than necessary and so we look to the recommendation put forth

20      by the Defendant and the reasons that he gives in his

21      memorandum.

22             Of course they are asking for a variance on Count 2

23      and they base that on a troubled childhood and abuse that led

24      to a fragile mental condition which would be the reason for

25      the variance.

1           The Defendant's memorandum suggests that he

2    deserves a tremendous break because he grew up in "war zone"

3    and suffered from physical injuries and no one wishes to

4    minimize the Defendant's background or any difficult

5    circumstances in his life.

6           Please let the Government respond with a couple of

7    points.  Of course the Court may grant a downward departure

8    if it finds mitigating circumstances of a degree not taken

9    into consideration by the guidelines include any information

10   regarding his background.

11          But if the facts show that he was truly

12   extraordinary the abuse suffered during childhood may

13   constitute a valid ground for departure and so looking to the

14   Rules under 5H1.3 and 5K2 as well as the case law cited by

15   the Defendant, the Government does not believe that a

16   downward departure is warranted in this case.

17          The factual record does not support, we believe,

18   the finding of the circumstances under which the Defendant

19   grew up were so extraordinary that a downward departure would

20   be warranted.

21          Just looking at the case law the Defendant cited,

22   the non-Circuit case Brown didn't address the merits of the

23   claim for extraordinary circumstances but they already noted

24   that the Defendant there submitted a psychologist report

25   showing that the Defendant's childhood drama was the primary

1    cause of his criminal behavior.

2         In Rivera, the second Circuit case, that

3    Defendant's factual records show that he had been beat with a

4    cord and he had his hands burned routinely.  While the facts

5    in Rivera are somewhat similar to the facts here, Your Honor,

6    we believe the facts in Rivera make it a little more

7    extraordinary but even there that Court rejected a downward

8    departure for reasons that we believe are relevant here.

9         First, much of the unfortunate circumstances in

10   that Defendant's life demonstrated lack of guidance as youth

11   and a disadvantage of upbringing and under 5H1.12 we know

12   that those are not relevant grounds for departure.

13        While the physical abuse may be relevant, the abuse

14   to this Defendant like the abuse to the Defendant in Rivera

15   did not rise to an extraordinary level that can be assumed to

16   cause mental or emotional pathology.

17        As the Second Circuit noted in Rivera, as much

18   could be said of every criminal defendant who has suffered

19   abuse from a child or corporal punishment at the hands of ---

20   parents.  While Mr. Curvey's childhood may have been tragic

21   we believe it does not fall outside the heartland of typical

22   cases.

23        So Your Honor just looking at the Defendant's

24   memorandum, we would like just to address a couple of other

25   issues.  The Defendant attributes his actions that evening to

1   being heavily intoxicated and abuse of PCP and the Government

2   has no information to support those claims other than the

3   Defendant's statements.

4          Officers who encountered him that night didn't

5   detect any signs of intoxication.  When he was first stopped

6   minutes after shooting at the police officers the Defendant

7   gave a story about coming out of a building and he did not

8   seem intoxicated and a few hours later he gave a coherent

9   story on video tape to detectives from the Metropolitan

10  Police Department.

11         Regardless, we believe that voluntary intoxication

12  of illegal drugs should not be a mitigating factor assuming

13  if it is even true.

14         The Defendant also writes in his letter that he did

15  not know what he had done until he saw the DVD that his

16  attorney showed him.  But in the statement that he gave to

17  the police officers just hours after he speaks coherently and

18  logically about what had happened.

19         Now he does lie about what had happened initially

20  but he eventually comes clean and so we believe the evidence

21  would rebut any claim that he was heavily intoxicated or

22  under PCP, under the influence of that.

23         Finally, the Defendant claims that in a show of

24  extraordinary acceptance the Defendant made efforts to assist

25  the Government and we wholeheartedly disagree with that

1   statement.  He did not cooperate.  When he was arrested he

2   initially lied about a young man who I will address as T.L.

3          When the Defendant was arrested another young man

4   named T.L. was arrested as well with him and the Defendant

5   after choosing to speak to the police told the police that

6   T.L. was in the car and he actually put most of the blame of

7   this incident on this person who this Defendant knew was not

8   part of the crime.

9          By attributing blame to somebody who he knew was

10  innocent we think this Defendant certainly did not cooperate

11  and we may have quite frankly been on a good faith basis to

12  seek a level for obstruction, a two level enhancement we

13  don't but I am just saying that he certainly did not

14  cooperate.

15         Even though he initially lied about T.L. eventually

16  six months later he did come clean and tell us that T.L. had

17  not been with him but there was no cooperation, he never told

18  law enforcement who was really in the vehicle with him and I

19  will just say generally that while he did speak to law

20  enforcement from a different jurisdiction I am told by that

21  jurisdiction that there was no cooperation.

22         So looking at the factors under 18 USC 3553(a) we

23  submit that the nature and the circumstances of this offense

24  and the history and character of this Defendant support a

25  sentence within the guideline range, Your Honor.

1              I don't want to rehash the facts, let me just look

2     for a moment at who this Defendant was on September 24th,

3     2010 and what he did.

4              This was somebody who has had a long history of

5     criminal activity and this was not the first time that he

6     fired a gun, he fired a gun when he was 17 and he was a youth

7     back then and he was held accountable for that crime.

8              You would think that after that crime he would have

9     learned his lesson, but then at age 21 he was involved in an

10    armed robbery and he was arrested for that and convicted, he

11    was sentenced to a term of 20 years much of which was

12    suspended and the Defendant received a break at that time as

13    well and he got out in 2002 I believe.

14             At that point one would think that this young man

15    would change things and many of the arguments put forth in

16    the Defendant's memorandum I think would fit better if they

17    were brought after he got out of jail on that incident.

18             But now at age 35 the Defendant is continuing to

19    use firearms to commit crimes of violence and it wasn't just

20    simply some aberration.

21             In 2005 and 2006 this Defendant continued to commit

22    crimes, maybe not as serious as this one, but he was still

23    continuing to commit crimes such as theft or unlawful entry

24    or threats of bodily injury to others.

25             So here he is on September 24th, 2010 and you would

1    think that a man at this age with experiences that he has had

2    with three young girls he would have known better than to use

3    a firearm to rob two innocent young men at a gas station and

4    you would think that that man would have known better than to

5    try to flee at a high rate of speed through city streets and

6    you would think that that man with all those life experiences

7    and all the things to live for with his three daughters would

8    have known better than to shoot at police officers but he

9    didn't.

10          Your Honor, we submit that the need for a sentence

11   imposed to reflect the seriousness of this crime, to provide

12   an adequate punishment and to deter this Defendant and others

13   we believe that a sentence within the guideline range is

14   necessary and it is not more than necessary.

15          But we believe it is sufficient and necessary

16   because there are people out there in Prince George's County

17   who may be thinking about committing a carjacking and there

18   are carjackings unfortunately in the county quite often and a

19   sentence within the guideline range will help send a message

20   to those people that if you do use a firearm to commit a

21   carjacking you will be held accountable.

22          For this Defendant at this stage of his life

23   whether or not a sentence within the guideline range will

24   deter him in the future I don't know, I hope so I think he

25   has, from what I have heard on the recordings, he has lovely

1   children and I hope that they will be able to enjoy him.

2          But quite frankly, Your Honor, for the safety of

3   this Defendant and the people around him, future victims and

4   his children we believe that a sentence within the guideline

5   range is necessary and is sufficient.

6          So if there is no question at this time I will have

7   a seat.  Thank you very much.

8          THE COURT:  Ms. Felder.

9          MS. FELDER:  May I have a moment, Your Honor?

10          THE COURT:  Yes.

11          MS. FELDER:  Thank you, Your Honor.  Your Honor, I

12   would like to acknowledge that Mr. Curvey's family is here,

13   his fiancé, daughters and grandmother are in attendance.

14          THE COURT:  Very good, thank you.

15          MS. FELDER:  This Court is tasked with fashioning

16   an individualized sentence not a sentence just based on the

17   conduct that we have heard the Government speak of but a

18   sentence that fulfills the purposes of sentencing under 18

19   USC 3553(a) and (a)(2).

20          We believe that a sentence of 144 months, 12 years

21   is sufficient but not greater than necessary to meet those

22   purposes of sentencing.  It is double the amount of time that

23   Mr. Curvey has ever served in custody.  He will be away from

24   his family for that entire time in addition to the time that

25   he has been in custody since September 2010.

1           Mr. Curvey has accepted full responsibility for his

2    actions.  He has spoken to the Government on multiple

3    occasions, while it didn't pan out the way that the

4    Government hoped that it would Mr. Curvey did admit his

5    involvement in the activity, he did admit that T.L. was not

6    involved in the activity.

7           He gave valuable information and the Government

8    wanted him to continue on that course and that was a

9    Government officer from a different jurisdiction that I had a

10   conversation with.

11          I understand that there are other conversations

12   that happened before my involvement in the case, however,

13   Mr. Curvey was not willing to risk any further danger to his

14   family going down that path, Your Honor.

15          So he did initially attempt to but it didn't pan

16   out the way that they expected it to although the information

17   was valuable and the Government wanted to follow-up on those

18   conversations that had been started.

19          Mr. Curvey started this life with a deficit, a

20   deficit in a number of ways.  He was exposed to drugs

21   prenatally, we are not sure of the exact type of drugs but we

22   do know that for the first two weeks of his life he was in

23   the neo-natal intensive care unit for going through

24   withdrawal systems as a newborn.  He was born four to five

25   weeks premature.

1          While his mother in the records that were submitted

2    to the Court initially indicated that she had not been on

3    drugs, apparently she was and her own mother recalls her

4    being on drugs while she was pregnant with Mr. Curvey and she

5    also left him in the hospital while he was in the intensive

6    care unit.

7          While Mr. Curvey is aware of his mother's drug use

8    as he was growing up, he wasn't aware of her drug use

9    obviously when it was prenatal but his grandmother recalls

10   that.  Not only did his mother struggled with drug addiction

11   she is also reported as being bi-polar and suffering from

12   depression.

13         From a young age it is apparent that Mr. Curvey was

14   not given the care that he needed and that he was entitled

15   to, his mom sought out help after she admitted that she would

16   beat him with the belt, she would beat him with her fist.

17   There is a lot of violence, persona violence, that he was

18   exposed to as a young child.  I think that is important that

19   matters.

20         Under 3553(a) the Court has to look at more than

21   just the conduct and yes it was dangerous and non-sensible

22   and it shouldn't have happened but if we were just concerned

23   with punishment then there would be no need for the purpose

24   of sentencing.

25         So I ask the Court to consider the fact that

1    Mr. Curvey was exposed to drugs prenatally but while it is

2    not clear what the factor that may be over his lifetime what

3    is clear is that children who are exposed to drugs in utero

4    often suffer from mental health issues, behavioral problems

5    and cognitive development.  That is all born out in the

6    records that were submitted to the Court and I will just cite

7    to those records briefly.

8            I refer to the sealed supplement that was filed on

9    April 5th and attached to it are eight, I believe it is 11

10   pages of documents from the Children's Hospital National

11   Medical Center and what you will see is that there were

12   psychological evaluations conducted on Mr. Curvey and there

13   are notes about his family and home life as well.

14           There is also a diagnoses, he was ultimately

15   diagnosed with oppositional behavior disorder, attention

16   deficit disorder with hyperactivity, he was prescribed

17   medication of Ritalin and is also recommended that he undergo

18   behavior therapy treatment as well as Dexedrine was

19   considered as an option for medication as well.

20           I think also of notice that his IQ was tested, he

21   had a full scale IQ score of 79, a verbal scale IQ score of

22   75, performance scale IQ score of 86 and his full IQ scale

23   was classified as borderline with approximately seven percent

24   of children his age obtaining scores equal to or lower than

25   his.

1           We provide those records to give the Court an idea

2    of his developmental stage, his impulse control issues, his

3    behavior control issues and insight into his family life.

4           Now, it is not just that he was exposed to drugs

5    prenatally, his mother had a mental illness bi-polar and

6    depression and children who have parents who have mental

7    illness also suffer from elevated mood disorders, increased

8    psychopathology including intentional and behavioral problems

9    and greater academic difficulties.

10          So that coupled together and then you add in the

11   fact that he did grow up in a war zone and that is not a term

12   that is created by the defense.  This is recognized in an

13   ongoing report in U.S. News and Report that Benning Terrace,

14   although the formal name was called "Simple City" it was a

15   war zone in Southeast DC.

16          You had people suffering from drug addiction, if

17   you weren't drug addicted you were selling drugs, there was a

18   gang war between the Avenue and the Circle I believe it is

19   called, Mr. Curvey grew up in that war zone and it really

20   was.

21          When we think of childhood and how people develop

22   we think of idyllic pastures where the parents are there

23   teaching them and guiding them, Mr. Curvey didn't have that

24   and while his record is extensive a lot of that resulted from

25   his own angst, from childhood and adolescent anxiety,

1    rebellion, anger and ultimately survival in this war zone.

2            That does not excuse his behavior at all and

3    Mr. Curvey does not look at it as an excuse, but it is

4    actually the context in which he grew up and he continued in

5    that survival mentality much through his adulthood.

6            The pride and joy of his life, and he will say this

7    himself, have been his daughters and he has three daughters

8    and he wants to be there for them, he understands that his

9    terrible decision making is going to take him away from those

10   girls for an extended amount of time.

11           We ask for a sentence of 24 months on Count 2 and

12   the mandatory 10 years on Count 3 for a total of 144 months

13   as being sufficient but not greater than necessary to fulfill

14   all the purpose of sentencing and it will be a deterrent for

15   Mr. Curvey.

16           He has never spent more than six years in prison

17   and now we are asking for a sentence that doubles that

18   amount.  While he is BOP he will be able to take advantage of

19   vocational training, any educational attainment.  He will be

20   able to undergo mental health counseling that he needs.

21           He will be able to participate in a drug program

22   while he won't benefit from a reduced sentence because of it

23   he will be able to participate in that program in order to

24   receive cognitive therapy as well as just assistance with

25   dealing with his triggers and issues that have led to the

1    drug abuse.

2            I think it is also important to know that

3    Mr. Curvey does have the capacity and the where with all to

4    do well when on release.  For a period of eight years, while

5    although not perfect, he worked, he supported his family, he

6    took care of his daughters, he taught them things, he taught

7    them how to tie their shoes, he taught them to have good

8    manners, he taught them how to behave.

9            He was there for his daughters, he worked, he has a

10   series of jobs that are noted in the PSR and he is able to

11   get those jobs on his own, go seek it out and do well at

12   those positions and he often left to get better employment to

13   earn more money.

14           Not only that, he did enroll in Westwood College to

15   continue his education.  Ultimately he needs to go and

16   complete his GED and then re-enroll but he wanted to do

17   better, he wanted to do more, he wanted to provide for his

18   family and he made great efforts at doing that.

19           In the letters that are offered in support by Faith

20   Crenshaw* as well as Rufus, Terrell his brother as well as

21   his father all indicate that he was on the right path, that

22   he wanted to do the right things but again he had obstacles

23   and setbacks.

24           At times he found himself homeless.  At times he

25   found himself unemployed and when you don't have the proper

1    protective factors to help you deal with those challenges,

2    when you don't have the proper mental health counseling and

3    drug addiction, counseling that you need to help you overcome

4    triggers and obstacles there are going to be setbacks.

5           Unfortunately, in September 2010 Mr. Curvey made

6    terrible decisions and he accepts that.  We cannot go back to

7    September 2010 and undo that or change anything that happened

8    but what we can do is make sure that he has an opportunity to

9    have a life and do well once he is released.

10          Twelve years is a significant amount of time, it is

11   a significant amount of time and will deter any future

12   criminal behavior.  Mr. Curvey will leave prison as an almost

13   50 year old man and we all know that as offenders or

14   Defendants age that there is a lesser likelihood of

15   recidivism and I believe that would be the case for

16   Mr. Curvey.  He has had a whole year, over a year to reflect

17   on his actions.

18          He has been talking to his daughters endlessly,

19   unfortunately he is in Charles County so they cannot have

20   contact visits and see them, he does talk to them.  He is

21   proud that his daughter published a book of poetry.  He is

22   proud that his two year old is walking and talking and doing

23   well and flourishing, he is proud of his daughters and he has

24   had this opportunity to reflect.

25          So we ask that the Court accept our recommendation

1   of 24 months on Count 2 followed by the 10 years of

2   imprisonment on Count 3 and all the factors that were

3   mentioned starting with in utero drug use, his mother's own

4   mental health issues, her incapability of providing for him

5   and abusing him as well as the area that he grew up in which

6   has been officially termed an urban war zone through a series

7   of documentaries that were published by the U.S. News and

8   World Report.

9           That he started life at a deficit and while he did

10   start in that place he does have the potential to grow and do

11   better and yes he is 35, he is not at the end of his life.

12          He has many, many more years ahead of him and we

13   ask that he is given the opportunity to use those years to

14   recapture some of those years that he squandered and be a

15   productive citizen in society and we do believe that he is

16   capable and able to do that as he has demonstrated in the

17   past.

18          Your Honor just in closing, while we have asked for

19   12 years here I think it is also important for the Court to

20   know that this is not the end of the road for Mr. Curvey.

21          He has exposure on State violation of probation

22   where Mr. Lenzner pointed out that he received a 20 year

23   suspended sentence, he is going to be violated because of

24   this and he also stemming from the same conduct, the pending

25   assault matter in DC that he is also going to have to answer

1   to.

2          So while the Government may think this is a lenient

3   sentence that he somehow is not being punished enough, this

4   is just a part of the greater picture and Mr. Curvey is going

5   to have to answer other Courts as well.

6          So we believe that 144 months is sufficient but not

7   greater than necessary given his background, given his

8   personal history, given the document a personal history of

9   not his mother's drug use, her mental health issues, his own

10  mental health and behavioral issues starting in early

11  childhood going through his teen years, Your Honor.

12         Thank you and we believe that this sentence is

13  sufficient and not greater than necessary.  If the Court has

14  not questions?

15         THE COURT:  You say he is still on probation for

16  the robbery with a deadly weapon?  That is not reflected in

17  the pre-sentence report.

18         MS. FELDER:  May I have a moment to get the updated

19  version?

20         THE COURT:  Yes.

21         (Pause.)

22         MS. FELDER:  Your Honor, my understanding is that

23  he is, he was released on July 1st, 2002.

24         MS. BLANCHE:  He was never placed on probation in

25  that case, it was just a straight time sentence.

1           MS. FELDER:  Your Honor, I am just reiterating my

2     understanding in having gone through this record and my

3     understanding is that he is exposed to time on a sentence

4     where he is going to have to do backup time.

5           So I apologize if that is incorrect but my

6     understanding is that he is subject to a violation of

7     probation as well as a pending matter in DC.

8           THE COURT:  The pending matter in DC for the

9     assault is reflected in the pre-sentence report as a pending

10    charge.  The sentence for the Montgomery County robbery shows

11    that on reconsideration of sentencing in August of 1998 he

12    was sentenced to 20 years, suspend all but eight, credit for

13    the 458 days that he had served but that there was no

14    probation to follow.

15          MS. FELDER:  I stand corrected if that is

16    incorrect, Your Honor, I apologize.

17          THE COURT:  I don't know if he was released in July

18    of 2002 this event happened more than eight years later in

19    any event.

20          The probation he was on at the time this happened

21    was the marijuana charge and he was revoked and given 30 days

22    already and that has been resolved, that is Paragraph 52 I

23    believe.

24          MS. FELDER:  That is correct, Your Honor, I see

25    that in Paragraph 52 and he also successfully completed other

1    probationary terms.

2            THE COURT:  Right, I see that.  So I do not believe

3    there is an unresolved probation violation at the moment.

4    There is the assault on a police officer in the Superior

5    Court that is pending.

6            MS. FELDER:  Any further questions?  Thank you,

7    Your Honor.

8            THE COURT:  Thank you.

9            (Pause.)

10           THE COURT:  Mr. Curvey, you now have an opportunity

11   yourself to tell me anything that you want me to know.

12           THE DEFENDANT:  How are you doing this evening,

13   Your Honor?

14           THE COURT:  I am doing fine, thank you.

15           THE DEFENDANT:  First I would like to apologize to

16   the victims of the situation and to my family of course for

17   dragging them through this situation.

18           I knew that I have been wrong, I should ---

19   responsibility for my actions.  I have a lot I want to say

20   but I don't want to say too much.

21           THE COURT:  Take your time and tell me whatever it

22   is you want me to know.

23           THE DEFENDANT:  First off, I know that I have like

24   I said committed that offense and made me look bad but Your

25   Honor actually I am not a bad person.  I am probably one of

1   the most respectful people that you meet and probably get to

2   know.

3            Throughout my years of being home, the eight years

4   I have been home from my incarceration I had a lot of changes

5   in my life.  Like you say, my daughters are my biggest factor

6   in my life and me not being there for them and with them is

7   kind of crushing me right now, the accomplishments my 15 year

8   old daughter made writing a book and me not being there

9   watching my two year old daughter grow and I have an 18 year

10  old daughter who is kind of messing up in school right now, I

11  would like to get ---.

12           But as far as myself, I have had a lot of changes

13  also from the 21 months I have been incarcerated.  I am

14  thinking I have to give up my family, myself even the

15  situation that I am in.  As far as Mr. --- situation I wish

16  he was here so I could apologize to him also for dragging him

17  through this situation.

18           And my dad, you know he is not here right now I

19  wish he was here so I can apologize to him also and have been

20  very supportive of me.  A lot of things that were mentioned

21  in letters by, I can't remember your name, what is your name

22  again, Mr. Lenzner.

23           Your Honor, throughout my life my dad has been very

24  supportive, my stepfather but that is my dad Mr. Hayes, yes

25  and he has been there, I am talking about from the beginning

1   to the end even now we still, I wish he was here so I could

2   thank him also.

3          My family who is back there also, it saddens me to

4   see them back there crying and stuff but I have to deal with

5   the situation.  But Nikki, I call my sister she is my cousin,

6   she has been there for me also coming up, she has halfway

7   raised me.

8          She had her hard times also, she has pulled through

9   and she is kind of my role model believe it or not watching

10  her come up and go through her situations that she just did a

11  360.

12         I look at that and that is what me came home after

13  the six and a half years of being incarcerated.  Her mother

14  passing away and not being able to be there for her, you know

15  coming home and Nikki taking me in knowing that --- fiancé

16  also has put a toll in my life also, she has been there for

17  me for the seven to eight years I have been home also.  She

18  has given me a child, a daughter, that I very much miss as

19  well as her.

20         Me and my other children go through our situations

21  and so forth but I still have love for them, my daughter is

22  sitting back there and my grandmother back there too I am

23  sorry.  She actually helped me and my grandfather to get

24  through my Westfield College days, got me a road to show for.

25         I didn't have my GED so I wasn't able to complete

1   it but this go around I think I am going to try to complete

2   it so I can continue to take care of my family and the things

3   I was doing before the situation occurred.

4            I just ask the Court to show mercy on me and give

5   me the chance to do things right and prove to you all that I

6   can do the right thing and make the right decisions on my

7   own.  Thank you, Your Honor.

8            THE COURT:  Thank you.

9            (Pause.)

10           THE COURT:  Mr. Curvey is before the Court for

11  sentencing on Count 2, carjacking and Count 3, use of a

12  firearm in the commission of a crime of violence.

13           These charges arose out of a very dangerous series

14  of events back in September of 2010.  As Mr. Lenzner has

15  recounted and as is stated in the agreed statement of facts,

16  Mr. Curvey and another person were in a car that had been

17  stolen the week before at a gas station in Prince George's

18  County at very early hours of morning when the Defendant

19  brandished a firearm and approached two men who were in

20  another car and took that other car from them threatening to

21  shoot them.

22           He drove away, eventually that car was parked and

23  the Defendant reentered the other vehicle, a stolen one.  By

24  then of course the police had been notified and the police

25  began trying to apprehend the car the Defendant was in.

1            A dangerous high rate chase occurred and the chase

2    ended when the stolen vehicle, the first stolen vehicle, went

3    out of control and crashed.  The Defendant got out and

4    attempted to flee on foot and in the process of doing that he

5    pointed a firearm in the direction of the Prince George's

6    County Police Officers and fired it.  The police returned

7    fire.

8            Eventually, the Defendant was apprehended by the

9    Metropolitan Police Department and he was identified.

10   Finally as pointed out, after his transportation to the

11   police station some property was found in the car that had

12   belonged to people who were earlier robbed at gunpoint the

13   day before.

14           Fortunately, there were no physical injuries to the

15   Defendant or the others from the discharge of the firearms or

16   the high speed chase.  That does not detract, however, from

17   the extremely dangerous conduct.  Mr. Lenzner reports no

18   evidence from the law enforcement end of the Defendant having

19   been high on either alcohol or PCP.

20           Frankly, if he had been that is even more dangerous

21   because whatever faculties one has in reticence to hurt

22   people disappear when one is high.  So I do not know that it

23   cuts in the Defendant's favor if in fact he was out there

24   with a loaded firearm and was high.  Instead it simply

25   indicates to me that it was even more just a stroke of luck

1    that no one including himself was physically injured during

2    this spree.

3            This conduct is not the first time the Defendant

4    has been involved in this kind of behavior.  Though there had

5    been somewhat of a gap since the last robbery there had been

6    some intervening threats to do bodily harm but misdemeanors

7    and I don't have the details so I really cannot assess how

8    significant except that they received only minor sentences.

9            But it does indicate that the Defendant was not

10   totally in control of his temper.  He has experienced

11   significant periods of incarceration before and yet was not

12   deterred from being involved in this armed carjacking and use

13   of a firearm.

14           So on that side of the ledger we have extremely

15   serious misconduct by someone who has experienced significant

16   punishments in the past, has a criminal history category that

17   is not at all enviable, puts him in a criminal history

18   category 5 which is the second to the highest category one

19   can achieve.

20           Some of his earlier convictions do not score

21   because they were when he was much younger and the time for

22   counting them has expired.

23           On the other side, we have someone who obviously

24   has developed good stable ties with family members.  Seeing

25   from people who are here and who have written to me and

1   indeed what the Government acknowledges they are aware of

2   through conversations that they monitor in the jail.  That is

3   a positive for a lot of reasons.

4        It shows me that he cares about people who are

5   close to him and is sincere in expressing his sorrow for

6   having put them through this yet again.  I read the records

7   that were sent late last week and the description of the

8   Defendant's early life and no one here would want to think to

9   comment that that was not tragic and very sad for a young

10  person to begin life in that fashion.

11       Others however who experienced that kind of

12  beginning do not make the same changes that Mr. Curvey made.

13  Others still remain law abiding and do the right thing in

14  society.  I too am sorry Mr. Hayes is not here so that he

15  could hear what you had to say about him.

16       It sounds to me like he tried very hard to be the

17  kind of good role model and caring parent that everyone hopes

18  to have.  For whatever reason you were unable to see that as

19  you were younger and instead chose a different path.

20       So it was not that there were no people in your

21  early upbringing who were in the right place, in the right

22  frame of mind and yet you did not follow their lead.  There

23  was also attempts to intervene through the criminal justice

24  system obviously not very successfully from the first time

25  you became involved in some criminal conduct.

1            I also understand that drug addiction is a very

2    difficult thing to overcome.  It takes a great deal of

3    strength but first it takes a great deal of resolve to try to

4    do that.  If the 21 months since your arrest in this case

5    have helped you to make that decision then incarceration has

6    had one of the beneficial results that we often hope for and

7    that is that people have the time and the space to make

8    decisions about their own lives that are positive.

9            I have to put this all together, I have to decide

10   what sentence and it will be a sentence of incarceration

11   obviously is sufficient but not greater than necessary, to

12   promote respect for law, to protect the public from you, to

13   try to send a signal to others that they ought not be

14   involved in this kind of behavior to begin with.  Those are

15   all some of the goals of imposing sentence.

16           The combination of guns and use of drugs by someone

17   who appears willing to try to take things from other people

18   that do not belong to him, a very, very dangerous conduct.

19           The other occasions I see you were involved with

20   other people as well, these are not things you do on your own

21   indicating to me that you have chosen to associate with

22   others who similarly have little respect for the safety of

23   other people or for their personal property.

24           A dangerous situation, people who get together with

25   others, we call that a conspiracy, it is much more dangerous

1   than individual activity because it is more likely to succeed

2   and people are reluctant to back out when they get involved

3   with others even if you think it is a bad idea you want to

4   save face and you are afraid to back out.  You need not only

5   to take care of your drug and alcohol problem but as well

6   your choice of associates.

7           The guidelines are a helpful part of a sentencing

8   determination.  They try to help a Judge assess the conduct

9   done by someone with the same criminal history category.

10  They obviously do not take into account some of the

11  individual characteristics that we learn about a Defendant.

12  So they are a help but they are not the be all and the end

13  all of sentencing in the Federal system.

14          Mr. Curvey, I am going to sentence you to 48 months

15  on Count 2 and a consecutive 120 months on Count 3.  If you

16  abide by the conditions of the institution you are in you

17  will earn good time credit and ultimately you will spend less

18  than 12 years in a Federal facility.

19          The sentence however is 14 and three quarters years

20  but as I said there is good time credit available should you

21  abide by the rules and regulations of the institution.

22          I simply cannot agree that the background of your

23  early life overcomes the seriousness of this behavior to the

24  extent requested by the defense.  We are going to follow the

25  incarceration with supervised release and that will be three

1    years on Count 2 and five years on Count 3.

2           This will be on all the normal and ordinary

3    conditions of supervision and in addition I will direct that

4    you participate in a program of substance and/or alcohol

5    abuse as directed as well as a program for mental health

6    treatment as directed.  I think both of those issues are life

7    long and that you will benefit from some formal programs in

8    that area.

9           You are going to make effort to obtain your -- okay

10   the supervised release is concurrent, I thank you Ms.

11   Darrow*.  To get your GED if you have not already done that

12   while you are in the Bureau of Prisons you will do that while

13   you are on supervised release and in addition you will

14   participate in a vocational or educational program as

15   directed.

16          Both of those are very important toward obtaining

17   the skills necessary in order to be employed.  Although you

18   have had some employment I think it can be better if you have

19   some additional training.  I am not going to impose any fine

20   but I do impose the special assessment of $100.00 per count

21   for a total of $200.00.

22          In addition, we have the agreed upon forfeiture of

23   the firearm and I will make that part of the judgment as

24   well.  I will prepare and enter this judgment in writing and

25   copies will be sent out to everyone.  Are there any requests

1    for recommendations?

2            MS. FELDER:  Yes, Your Honor, we ask for a

3    recommendation that Mr. Curvey has a --- to Petersburg,

4    Virginia.

5            THE COURT:  Is that for the particular program, the

6    location?

7            MS. FELDER:  Yes, Your Honor, location and

8    programming.  In addition, we ask the Court if the Court is

9    inclined to recommend that Mr. Curvey receives credit from

10   September 24th, 2010 under 18 USC 3585.

11           THE COURT:  The pre-sentence report reflects that

12   he has been in someone's custody since September 24th, 2010

13   as long as he does not receive credit against that pre-trial

14   time on some other sentence then he will be credited with

15   that.

16           It is up to the Bureau of Prisons to make that

17   calculation but the report that they will get is the one that

18   we have here showing that timing.

19           Mr. Curvey, you gave up some of your rights to

20   appeal as part of your plea agreement with the U.S.

21   Attorney's Office, let me advise you that if you want to

22   appeal it must be noted in writing within two weeks of today.

23           So talk that over promptly with Ms. Felder because

24   she would help you by filing the notice of appeal if that is

25   what you decide to do.  I believe there is Count 1?

1            MR. LENZNER:  Yes, Your Honor, we are willing to

2     dismiss Count 1.

3            THE COURT:  I believe that completes this

4     proceeding.  Is there anything further?

5            MR. LENZNER:  Not from the Government.

6            MS. FELDER:  Nothing from the defense, thank you

7     Your Honor.

8            MR. LENZNER:  Thank you.

9            THE CLERK:  All rise.  This Honorable Court stands

10    adjourned.

11           (Whereupon, the hearing was concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

mls                                                                      43

<u>C E R T I F I C A T E</u>

        I certify that the foregoing is a correct

transcript from the duplicated electronic sound recording of

the proceedings in the above-entitled matter.


/s/ Michelle L. Smiroldo                    05-31-12
Michelle L. Smiroldo                        Date
Certified Transcriber
Certificate No.:  CET**D-579