1                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
2                          SOUTHERN DIVISION

3    UNITED STATES OF AMERICA        .

4           vs.                      .    DOCKET DKC-11-0072

5    RICKEY CURVEY                   .    GREENBELT, MARYLAND

6                                    .    NOVEMBER 23, 2011

7

8              TRANSCRIPT OF REARRAIGNMENT\GUILTY PLEA
              BEFORE THE HONORABLE DEBORAH K. CHASANOW
9                   UNITED STATES DISTRICT JUDGE

10

11   A P P E A R A N C E S

12   FOR THE GOVERNMENT:          JOMATHAN FALK LENZNER, ESQ.
                                  ROBERT K. HUR, ESQ.
13                                ASSISTANT U.S. ATTORNEYS

14   FOR THE DEFENDANT:           ANDREW CARTER, ESQ.

15

16

17   Court Reporter:             Sharon O'Neill, RMR
                                 Official Court Reporter
18                               United States District Court
                                 6500 Cherrywood Lane
19                               Greenbelt, Maryland 20770
                                 301-344-3227
20

21

22

23

24

25

1          THE COURT:  Good morning.

2          VOICES:  Good morning, Your Honor.

3          THE COURT:  Please be seated.  Mr. Lenzner.

4          MR. LENZNER:  Thank you.  Calling the case of United

5    States of America vs. Ricky Curvey, criminal number DKC

6    11-0072.  Jonathan Lenzner and Robert Hur on behalf of the

7    Government and also present with us is Special Agent John

8    Dunham with the Federal Bureau of Investigation.  This matter

9    is called for a rearraignment.  Thank you.

10          MR. CARTER:  Good morning, again, Your Honor.  Andrew

11   Carter on behalf of Mr. Rickey Curvey.

12          THE COURT:  Very good.  Okay.  Mr. Curvey, I'm going

13   to ask you to stand and address your attention to Ms. Derro.

14   She is going to place you under oath and ask you some

15   preliminary questions.

16          (The oath was administered.)

17          THE CLERK:  Please state your full name for the

18   record.

19          THE DEFENDANT:  Rickey Ricardo Curvey.

20          THE CLERK:  What is your age?

21          THE DEFENDANT:  Thirty-six.

22          THE CLERK:  In what year were you born?

23          THE DEFENDANT:  1975.

24          THE CLERK:  On March 31, 2011, you appeared before

25   United States Magistrate Judge Schulze for the purpose of

1    arraignment, at which time you entered a plea of not guilty to

2    Counts one, two and three of the indictment.  Do you wish to

3    change your plea at this time?

4              THE DEFENDANT:  Yes.

5              THE CLERK:  How do you wish to plead?

6              THE DEFENDANT:  Guilty.

7              THE CLERK:  Guilty as to which count?

8              THE DEFENDANT:  Two and three.

9              THE CLERK:  The plea is guilty to Counts two and

10   three, and not guilty to Count one of the indictment, is that

11   correct?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Thank you.  You may be seated. Mr.

14   Curvey, I'm going to ask you additional questions now so that I

15   can make certain that you understand fully what it means to

16   plead guilty, and that you are doing so voluntarily.  If any of

17   any questions are unclear, would you let me know.

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Good.  And if you want to ask Mr. Carter

20   anything, please feel free to do that as well.  Could you tell

21   me your educational background.

22             THE DEFENDANT:  A little bit of high school.

23             THE COURT:  A little high school.  Have you tried to

24   take GED courses or get a GED?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Okay.  But how far have you gotten on

2    that?

3          THE DEFENDANT:  I failed it.

4          THE COURT:  Okay.  Can you read and write in English

5    okay?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you ever been treated for any mental

8    illness, alcoholism or any drug problem?

9          THE DEFENDANT:  No.

10         THE COURT:  Are you currently taking any medications

11   that can make you drowsy, or might interfere with your

12   concentration?

13         THE DEFENDANT:  No, ma'am.

14         THE COURT:  Okay.  The indictment has three counts.

15   Count two charges that on or about September 24, 2010, here in

16   Maryland and elsewhere, you, with the intent to cause serious

17   bodily harm, did by force, violence and intimidation, take from

18   the person and presence of another a motor vehicle that had

19   been transported, shipped and received in interstate commerce,

20   specifically a 2004 Toyota bearing a particular vehicle

21   identification number.

22         That charge is alleged to violate Title 18 of the

23   United States Code, section 2119.  You are also charged under

24   the aiding and abetting statute.  Do you understand the charge

25   in Count two?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  If you are found guilty of that offense,

3    you face a maximum possible penalty of 15 years in prison,

4    followed by supervised release of up to three years, a possible

5    fine of up to $250,000 and a $100 special assessment.

6          Supervised release is when someone who serves some

7    time in prison is released on conditions of good behavior.  If

8    he violates those conditions, he can be sentenced to an

9    additional term in prison on top of whatever was imposed to

10   begin with, without credit for the time that was spent on

11   release, and under some circumstances the total imprisonment

12   can exceed that 15 year maximum by the term of supervised

13   release.  Do you understand the maximum possible penalty

14   provided by law for this offense?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Count three charges that on or about

17   September 24, 2010, again in Maryland and elsewhere, you did

18   knowingly possess, use and discharge a firearm during and in

19   furtherance of a crime of violence, for which you may be

20   prosecuted in a court of the United States, that is the

21   conspiracy to commit carjacking that's alleged in Count one,

22   and the carjacking, which is alleged in Count two, and those

23   charges are incorporated in this count.

24         This is alleged to have violated Title 18 of the

25   United States Code, section 924(c).  And, again, there is an

1    aiding and abetting allegation.  Do you understand the charge

2    in Count three of this indictment?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  If you are found guilty of this offense,

5    you face a mandatory minimum sentence of ten years, and that

6    sentence would have to be imposed consecutive to any sentence

7    imposed on Count two, and a maximum possible term of life in

8    prison.

9              There is an additional term of supervised release of

10   up to five years, again, a possible fine of up to $250,000 and

11   a $100 special assessment.

12             Do you understand both the mandatory consecutive

13   minimum sentence, as well as the maximum sentence for Count

14   three?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  Okay.  We'll get to the plea agreement

17   and the guidelines in a few moments, but I want to make certain

18   that you understand you have the absolute right to plead not

19   guilty.  No one can make you come into court and enter a guilty

20   plea.

21             If you plead not guilty, you are presumed to be

22   innocent.  That means that you cannot be found guilty unless

23   there is a trial at which your guilt is proven beyond a

24   reasonable doubt.

25             You have the right to a trial before a jury of 12

1    people, all of whom would have to agree unanimously that you

2    were guilty.  If even one of those jurors did not find guilt,

3    there could be no verdict of guilty entered at the conclusion

4    of that trial.

5              Alternatively, if both you and the Government agreed,

6    there could be a trial before a judge without a jury, but in

7    either case you would be presumed to be innocent, and it would

8    be the Government's burden to try to overcome that presumption

9    with proof beyond a reasonable doubt.

10             To try to do that, the Government would have to call

11   people to testify as witnesses.  They would appear here in open

12   court.  You would be present.  The witnesses would be placed

13   under oath and they would be subject to cross-examination, that

14   is questioning by your lawyer.

15             You would, of court, have the right to be represented

16   by a lawyer throughout the trial and, as you know, if you

17   cannot afford to hire counsel, the Court appoints an attorney

18   to represent you.

19             At any trial you would have the right to testify on

20   your own behalf if you wanted to, but you would have the equal

21   right to remain silent.  If you decided not to testify, neither

22   the jury nor the judge could hold it against you in any way,

23   and if you wished, the judge would tell the jury about your

24   right not to testify and that they couldn't hold it against you

25   in any way during their deliberations.

1          You would have the right to present a defense, to

2    call other people as witnesses, and to produce documents or

3    other things as exhibits, and you would have the Court's

4    assistance through the subpoena power in requiring people to

5    come to court to testify for you.

6          If you were found guilty after that trial, you would

7    have the right to appeal, to complain about any mistakes that

8    might have been made before or during that trial.

9          Do you understand all of those rights that you give

10   up by pleading guilty?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  If I accept your plea, there won't be any

13   trial and instead we'll set a date for sentencing.  Do you

14   understand that?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  In addition, there were some motions

17   filed on your behalf to dismiss some of the wording in the

18   indictment, and to strike or dismiss Count three, as well as to

19   adopt motions that had been filed by a codefendant.

20          By pleading guilty you are giving up your right to

21   have me even decide those motions.  You understand that I'm

22   just going to set them aside and we won't do anything with

23   them?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Okay.  There is a written plea agreement.

1   Ms. Derro, you have the original

2            THE CLERK:  Yes, I do, Your Honor.

3            THE COURT:  Okay.  That's going to be marked as an

4   exhibit and placed in the court file.  This plea agreement, Mr.

5   Curvey, was negotiationed for you by your lawyer directly with

6   the prosecutors.  I have not been a party to those discussions,

7   and I am not bound by the agreement.

8            I will certainly take the agreement into account as I

9   make sentencing decisions, but you need to understand that I

10  might not agree, for instance, with the proposed advisory

11  sentencing guidelines that are set forth in the plea agreement.

12           If I accept your guilty plea today, you will not be

13  allowed to withdrawal your guilty plea, no matter what

14  decisions I make about sentencing.  Do you understand that?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  The Probation Office is going to prepare

17  a Presentence Report, and that report will contain some

18  proposals with regard to the advisory sentencing guidelines

19  and, perhaps, other things that can affect the sentence.

20           The Probation Office also is not bound by the

21  agreement, although they will take it into account as they make

22  their recommendations.

23           We are going to review the plea letter carefully

24  together.  It is important that we understand all of its

25  provisions.  Do you have a copy available to follow along?

1      THE DEFENDANT:  Yes, ma'am.

2      THE COURT:  Okay.  Good.  It first tells me you have

3  agreed to plead guilty to Counts two and three of the

4  indictment, charging you with carjacking, and with the use of a

5  firearm in the commission of a crime of violence.  The letter

6  says that at the appropriate time you will admit that you are,

7  in fact, guilty of these offenses.

8      Next, the letter sets out the elements of the

9  offenses.  These are the things that the Government would have

10  to prove beyond a reasonable doubt if the case were to go to

11  trial.

12      For the carjacking charge in Count two, the

13  Government would have to prove that you took a motor vehicle

14  from the person or presence of another person; second, that you

15  took that vehicle using force, violence, or by acting in an

16  intimidating manner.

17      Third, that you acted with the intent to cause death

18  or serious bodily harm and, fourth, that the motor vehicle had

19  previously been transported, shipped or received in interstate

20  or foreign commerce.

21      For the use of a firearm in the commission of a crime

22  of violence in Count three, the Government would have to prove

23  that you knowingly and intentionally used and carried a firearm

24  and, second, that you did so in furtherance of the commission

25  of a crime of violence for which you may be prosecuted in a

1    court of the United States, and in this case it's the charge

2    described in Count two.

3            The letter then sets out those penalties that I read

4    to you a moment ago, the sentence, possible sentence for Count

5    two and the mandatory minimum consecutive sentence and the

6    maximum sentence on Count three.

7            Next, the letter catalogs all of the rights that you

8    do give up by pleading guilty.  In addition to the trial

9    rights, the letter says you understand that a conviction in

10   this case could cause you to lose some valuable civil rights,

11   and could subject you to deportation or a loss of immigration

12   status.

13           Let me advise you that if you are not a United States

14   citizen, a conviction in this case could affect your ability to

15   remain in the United States.  Has anybody made any promise to

16   you concerning any immigration matter in order to convince you

17   to plead guilty?

18           THE DEFENDANT:  No, ma'am.

19           THE COURT:  Okay.  The letter then refers to the

20   advisory sentencing guidelines, and tells me that you

21   understand that I must calculate those guidelines and then use

22   them as one of the factors in determining the sentence in your

23   case.

24           The letter then refers to the factual stipulation,

25   which is Attachment A and appears beginning at page nine of

1    this document.

2           I'm going to ask Mr. Lenzner to read the facts out

3    loud.  Please listen carefully.  When he is finished, I will

4    ask you if you agree that these facts are true.  Mr. Lenzner.

5           MR. LENZNER:  Thank you, Your Honor.  On or about

6    September 24, 2010, at approximately 3:00 in the morning, the

7    defendant, Rickey Curvey and co-conspirator number one drove a

8    white Honda Accorded to the Exxon gas station, located at 4747

9    Silver Hill Road in Prince George's County, Maryland.

10          The white Honda Accord had been stolen from another

11   gas station in Prince George's County on September 15, 2010.

12   The defendant exited the white Honda Accord and approached two

13   male victims who had arrive in a red Toyota Avalon.

14          While brandishing a firearm, the defendant stole

15   property including cellular telephones and U.S. currency from

16   the two male victims.  The defendant held the firearm to the

17   body of one of victims, pointed the firearm at the second

18   victim and threatened to shoot him.

19          The defendant, still brandishing the firearm, then

20   carjacked the red Toyota Avalon from the presence of the two

21   victims.  The defendant drove the red Toyota Avalon away from

22   the gas station, followed by co-conspirator one in the white

23   Honda Accord.

24          The incident was also captured on the gas station's

25   video surveillance system.  The red Toyota Avalon was

1    manufactured outside of Maryland and therefore had traveled in

2    interstate commerce prior to that date.

3            Soon after the carjacking, the defendant parked the

4    red Toyota Avalon and re-entered the white Honda.  One of the

5    victims of the carjacking called 911 and Prince George's County

6    police officers were dispatched to the area.

7            When a marked Prince George's County police vehicle

8    attempted to stop the white Honda within minutes of the

9    carjacking, the defendant and co-conspirator one fled in the

10   white Honda Accord towards Washington, D.C. at a high rate of

11   speed.

12           The what Honda Accord led the Prince George's County

13   police officers on a high speed chase into Washington, D.C. and

14   the chase ended when the white vehicle lost control and crashed

15   into Randall Circle, coming to a stop inside the traffic

16   circle.

17           The Prince George's County police vehicle stopped in

18   front of the white Honda Accord and the officers exited the

19   cruiser while ordering the occupants to remain inside.  The

20   defendant and co-conspiracy one exited the white Honda Accord

21   and attempted to flee on foot.

22           The defendant pointed a firearm in the direction of

23   the Prince George's County police officers and discharged the

24   weapon as he attempted to flee.  The officers returned fire as

25   the defendant and co-conspirator one ran from the police.

1        The Prince George's County police officers lost sight

2   of the defendant as he ran between houses.  Just minutes later

3   the defendant was apprehended by Metropolitan Police Department

4   who were dispatched to the area to assist the Prince George's

5   County police officers.

6        MPD officers stopped the defendant as he ran out of

7   an alley, away from the pursuing Prince George's County

8   officers.  Law enforcement later recovered a Browning 9 mm

9   semiautomatic firearm bearing serial number 296518 from a yard

10  near where the defendant was stopped.

11       The firearm contained eight 9mm cartridges in the

12  magazine.  The magazine was stovepiped, in that a spent bullet

13  casing was jammed in the firearm's ejection port.  The firearm

14  had discharged and the casing did not properly clear the

15  ejection port, causing the firearm to jam.

16       While at the scene of the his arrest, the defendant

17  was positively identified by the two victims of the carjacking

18  at the Exxon gas station, and buy the two Prince George's

19  County police officers who pursued him.

20       The defendant was transported to the MPD Sixth

21  District in a police vehicle.  After the transport, police

22  officers recovered from the floor of the police vehicle

23  personal property that had belonged to an individual who had

24  been robbed at gun point on September 23, 2010.

25       When he was later interview by MPD detectives, the

1    defendant admitted in substance to being inside the white Honda

2    Accord during the police chase and crash.

3              Law enforcement recovered the defendant's DNA from

4    the red Toyota Avalon.  Just, I'll note that there's one

5    sentence that's been blacked out and my initials, Mr. Carter's

6    initial and the defendant also dated that edit.  Thank  you,

7    Your Honor.

8              THE COURT:  Okay.  The copy I had been given, which

9    is unsigned, doesn't have that sentence.

10             MR. LENZNER:  Your Honor, the --

11             THE COURT:  So you retyped it but the original had

12   not been?

13             MR. LENZNER:  Correct.

14             THE COURT:  Okay.  Well, I don't have that sentence

15   anyway.  So, there we go.  Mr. Curvey, did you hear the facts

16   when they were read out loud by Mr. Lenzner?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you agree that all of those facts are

19   true?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you agree that you are, in fact,

22   guilty of the offenses set forth in Counts two and three of the

23   indictment?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Okay.  Based upon those facts, and the

1    parties' understanding of the guidelines, they have entered

2    into the following stipulations:

3              For Count two, the carjacking, the base offense level

4    is 20.  There is a two level increase because the offense

5    involved carjacking.

6              As of right now the Government will not oppose the

7    two level downward adjustment for acceptance of responsibility,

8    and has agreed to move for an additional one level for a total

9    of three level downward adjustment for acceptance of

10   responsibility.

11             Mr. Curvey, I say they agree right now, because they

12   will pay attention to your conduct up until sentencing.  If the

13   Government thinks you have failed to admit all aspects of the

14   factual stipulation; if you deny your involvement in the

15   offenses; if you give conflicting statements about your

16   involvement; if you are untruthful with me, the Probation

17   Office or the U.S. Attorney; if you obstruct or attempt to

18   obstruct justice; engage in any new criminal conduct, or if you

19   attempt to withdraw your guilty plea, then the Government will

20   likely no longer agree to any downward adjustment for

21   acceptance of responsibility.

22             Indeed, if they think you are obstructing justice or

23   engaging in some new criminal conduct, they not only will

24   oppose the downward adjustment for acceptance of

25   responsibility, but they may ask me to move higher on the

1    advisory guideline scale as a result.

2            If they should do that, I will hear fully from both

3    sides before deciding whether you've done any of those things

4    and, if so, what to do about it under the guidelines.

5            It's important, though, for you on the understand

6    that if the Government should take that position based upon

7    something that happens between today and the time of

8    sentencing, you won't be allowed to withdraw your guilty plea

9    on that basis.  Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Okay.  Now, Count three, which is the use

12   of a firearm during and in relation to a crime of violenve, the

13   parties agree that the guideline is that mandatory ten year

14   consecutive sentence, because the firearm was used, carried and

15   discharged.

16           There is no agreement concerning the criminal history

17   information and thus your criminal history category.  And, as

18   you know, criminal history is a very important part of the

19   guideline calculation and can affect the range quite a bit.

20           Both sides are going to have the full opportunity to

21   tell me anything that they think is relevant to sentencing.

22   The Government has agreed to recommend a sentence within the

23   guideline range for Count two, and to recommend the ten year

24   mandatory consecutive sentence for Count three.

25           You will be free to argue for any sentence you think

1   is appropriate, whether it's within the guidelines on Count two

2   or not.  You have just agreed you're going to let us know what

3   information you want me to consider in advance of sentencing.

4   In addition, the Government is going to dismiss the other

5   charge, Count one, at the time of sentencing.

6           Ultimately, Mr. Curvey, it's up to me to decide what

7   sentence to impose.  It can be anywhere from nothing up to the

8   15 year maximum on Count one, and anything from the ten year

9   mandatory minimum to life in prison on Count two.  Do you

10  understand that?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  There is a forfeiture provision here.

13  You understand that you are not permitted to have that firearm,

14  and you agree to give up both the firearm and the ammunition

15  and not to help anybody make any claim about those items.  Do

16  you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  In addition to the trial right that I

19  reviewed with you that you give up by pleading guilty, your

20  plea agreement contains a waiver of some your rights to appeal.

21  Specifically, you're giving up your right to appeal the

22  conviction, that is the determination of guilt and, secondly,

23  you're giving up some of your rights to appeal the sentence.

24          If I sentence you at a level 19 on the guideline

25  table for Count two, and impose the ten year consecutive

1   sentence on Count three, or give you a lower sentence, you are

2   giving up your right to appeal.  Do you understand that?

3            THE DEFENDANT:  Yes, ma'am.

4            THE COURT:  On the other side, if I sentence you at a

5   level 19 on Count two and give you ten year consecutive sense

6   on Count three, or give you a higher sentence, the Government

7   is giving up it's right to appeal.

8            Both side will have a right under Rule 35 to complain

9   if they think I've imposed an illegal sentence.  If you ever

10  think I've imposed a sentence higher than the 15 year maximum

11  for Count two, you will have the right to complain and to

12  appeal if necessary.

13           But you need to understand on the other side that if

14  the Government thinks there is a mandatory minimum sentence

15  that applies, such as Count three, and that I have mistakenly

16  failed to impose a mandatory minimum, they will have the right

17  to complain and to appeal if necessary.  Do you understand

18  that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  I am now turning to the sealed supplement

21  and if a transcript is ever prepared, this portion will remain

22  under seal, but I see there is nothing further to discuss.

23           Mr. Curvey, have we now talked about all the

24  provisions that you think are part of your plea agreement with

25  the U.S. Attorney's Office.

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Other than what's written down, has

3    anybody made any promise to you to induce you to plead guilty?

4          THE DEFENDANT:  No, ma'am.

5          THE COURT:  Have you been threatened in any way?

6          THE DEFENDANT:  No.

7          THE COURT:  How many times did you meet with Mr.

8    Carter to talk about the charges and your decision to plead

9    guilty?

10         THE DEFENDANT:  Numerous times.

11         THE COURT:  Numerous.  Let me ask it this way, has he

12   always had the time that you thought was necessary to talk with

13   you about this case.

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  Yes.  Has he answered all of your

16   questions?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  Are you satisfied with the help he has

19   provided you this case?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Counsel, what have I forgotten to ask or

22   left unclear?

23         MR. LENZNER:  That's it, Your Honor.  Thank you.

24         MR. CARTER:  Nothing from the defense, Your Honor.

25         THE COURT:  Mr. Curvey, we have spent time today

1  talking about the charges, what the Government would have to

2  prove if the case were to go to trial, the sentencing

3  structure, that is the maximum for Count two, the mandatory

4  consecutive minimum and possible maximum for Count three, the

5  terms of your plea agreement, the guidelines, but most

6  importantly, all of the rights that you are giving up by

7  pleading guilty.  Is it still your desire to plead guilty to

8  these offenses?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  I'm satisfied that you understand what it

11  means to plead guilty and that your pleas are being entered

12  knowingly.  I am satisfied that you are doing so pursuant to a

13  written plea agreement, and that there have not been any

14  improper promises and no threats.  I believe your plea is being

15  entered voluntarily.

16          I am also satisfied, based on the stipulated facts,

17  that there is an adequate factual basis for the plea.

18  Accordingly, I accept your pleas of guilty.  You are as of now

19  adjudged guilty of the offenses in Counts two and three of the

20  indictment.

21          Is there any particular request for the timing for

22  sentencing at this point?

23          MR. LENZNER:  Not from the Government, Your Honor.

24          MR. CARTER:  No, Your Honor.

25          THE COURT:  February 27th at say 2:30?

1          MR. CARTER:  Fine with the defense, Your Honor.

2          MR. LENZNER:  That's fine for the Government.

3          THE COURT:  Mr. Curvey, I have signed a order setting

4    sentencing for February 27th at 2:30 in the afternoon.  More

5    importantly, this order requests that the Probation Office

6    prepare a Presentence Report.  Mr. Carter will help you provide

7    some background information to the Probation Officer so it can

8    be included in the report, and when the draft is ready he'll

9    review it with you, so that you can let us know if there is

10   anything inaccurate or incomplete in the report.

11         If there are disputes about the contents of the

12   report, they will be brought to my attention and I will decide

13   at the time of sentencing what should or shouldn't be in the

14   report.  It's a very important document.  I rely on it quite a

15   lot in making sentencing decisions.

16         It is also provided to the Bureau of Prisons so they

17   can decide where someone should serve a sentence and what

18   programs are most appropriate for him.  I think it is in your

19   interest that we make the report as complete and accurate as we

20   can, so I urge you to cooperate during the process of its

21   preparation.

22         Once we have all the information that we need, and

23   the proper amount of time available, we will have sentencing,

24   currently set for the 27th of February at 2:30 in the

25   afternoon.  Do you have any questions?

1        THE DEFENDANT:  No, ma'am.

2        THE COURT:  No.  All right.  Is this anything further

3  in this case?

4        MR. LENZNER:  Not if the Government, Your Honor.

5        THE COURT:  Anything?

6        MR. CARTER:  Nothing from the defense, Your Honor.

7        THE COURT:  No.  Okay.  Thank you.  That will

8  complete this proceeding.

9

10

11                   COURT REPORTER'S CERTIFICATE

12                            -oOo-

13        I certify that the foregoing is a correct transcript

14  from the record of proceedings in the above matter.

15

16  Date:

17                              /s/ _____

18                              Sharon O'Neill

19

20

21

22

23

24

25